IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DARRELL ROBERTSON,                    )
                                      )
        Plaintiff,                    )
                                      )        NO. 3:24-cv-00919
v.                                    )
                                      )        JUDGE RICHARDSON
DENNIS LANNI, *et al.*,               )
                                      )
        Defendants.                   )
                                      )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a "Motion to Dismiss Second Amended Complaint" (Doc. No. 16, "Motion"), filed by Defendants J. Phillip Jones and Jessica Binkley, d/b/a The Law Office of J. Phillip Jones (collectively "Trustees").[1] Via the Motion, the Trustees seek to dismiss the "Second Amended Complaint" (Doc. No. 14, "SAC") of Plaintiff, Darrell Robertson, solely as to the claim therein brought against the Trustees.[2] The Trustees have filed an opening brief (Doc. No. 16-1, "Opening Brief") in support of the Motion. Plaintiff has filed a response in opposition (Doc. No. 17, "Response") to the Motion, and Trustees have filed a further reply (Doc. No. 20, "Reply") in support of the Motion.

For the reasons described herein, the Motion (Doc. No. 16) is **DENIED**.

---

[1] In addition to the Trustees, Dennis Lanni, Housing Group Fund 401(K) Pension Plan, Housing Group Fund Corp., Pacific Climbing Society, and HGF Management Company, LLC are also defendants in this action (but not movants on the instant Motion).

[2] As relevant here, it appears to the Court that Count VII and only Count VII of the SAC is brought against the Trustees, (Doc. No. 14 at ¶¶ 142-52), and so the Court herein will consider only Count VII of the SAC.

<u>ALLEGED FACTS</u>[3]

This case concerns a dispute over the property located at 128 Stone Briar Court, Nashville,

Tennessee 37211 (the "Property"). (Doc. No. 14 at ¶¶ 18-19). On July 22, 2005, Plaintiff "obtained

an 80/20 loan" from Option One Mortgage Corporation ("Lender") to purchase the Property. (*Id.*

at ¶ 18). "The first mortgage loan was for 80 percent of the purchase price and is current and not

the subject of this lawsuit. Plaintiff's second mortgage or 'piggyback' loan was for 20 percent of

the home financing." (*Id.*). With respect to the second mortgage, Plaintiff "executed a Note and

Deed of Trust (collectively, the "Loan") in the amount of $58,000.00, in favor of Lender." (*Id.* at

¶ 19).[4] The Loan encumbered the Property, (*id.*), and the "Deed of Trust was recorded in the

Davidson County Register of Deeds, as Instrument # 20050727-0087575." (*Id.*). After the Loan

was executed, "Wilshire Credit Corporation ("Wilshire") began servicing the Loan[,] and Plaintiff

made payments on the Note to Wilshire." (*Id.* at ¶ 21). "Sometime in 2008, Plaintiff fell behind on

his Note payments and, on May 27, 2008, Wilshire sent Plaintiff a notice of default and intent to

accelerate the loan and enforce its lien rights against the Property if the default remained uncured

("Default Letter")." (*Id.* at ¶ 22).[5] Plaintiff's efforts to negotiate a loan modification with Wilshire

---

[3] The facts herein are taken from the SAC. For purposes of the instant Motion, the facts in the SAC are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

The Court at times quotes from the SAC herein. For clarity, the Court notes that unless indicated otherwise, as for example, by the use of single quotation marks nested within a portion of the SAC quoted using double quotation marks, it is quoting the SAC and not directly quoting some statement (made during the underlying alleged events at issue) that the SAC quoted or paraphrased.

Because this Motion is brought seeking the dismissal of the claim against the Trustees only, the Court includes only the alleged facts that it discerns are relevant to the claim against the Trustees.

[4] A copy of the Note was filed as an exhibit to the SAC at Docket No. 14-2 and a copy of the Deed of Trust was filed as an exhibit to the SAC at Docket No. 14-3.

[5] A copy of the Default Letter was filed as an exhibit to the SAC at Docket No. 14-4.

were unsuccessful, (*id.* at ¶¶ 27-28), and in February 2010, "Wilshire mailed Plaintiff a notice of acceleration of loan maturity and intent to commence foreclosure proceedings on the Deed of Trust without further notice." (*Id.* at ¶ 28). "In reliance upon Wilshire's notice of loan acceleration and threat of foreclosure, Plaintiff hired [the law firm Salas Slocum Law Group, PLLC] and, on March 18, 2010, filed Chapter 7 bankruptcy in the U.S. Bankruptcy Court for Middle District of Tennessee, Case No. 3:10-bk-02929, and later obtained a discharge on July 21, 2010." (*Id.* at ¶ 29). "After Plaintiff's discharge, neither Wilshire nor any subsequent Note Holder took action to enforce the Deed of Trust, by nonjudicial foreclosure or otherwise, for the next thirteen (13) years." (*Id.* at ¶ 31).

On June 13, 2023, the Lender executed an "'Assignment of Deed of Trust,' [(hereinafter, "First Assignment of Deed of Trust")] purporting to assign the subject Deed of Trust to Defendant Housing Group Fund 401K Pension Plan ("HGF 401K Pension Plan")." (*Id.* at ¶ 32).[6] On July 7, 2023, Defendant Dennis Lanni ("Lanni")—the administrator or trustee of HGF 401K Pension Plan, (*id.* at ¶ 35)—"mailed Plaintiff a 'Welcome and Notice of Servicing Transfer' letter, claiming the Loan [had been] sold, assigned and transferred to HGF 401K Pension Plan on June 23, 2023, and directed Plaintiff to send all payments due on the Loan on or after June 23, 2023, directly to HGF 401K Pension Plan." (*Id.* at ¶ 33).[7] Lanni also mailed Plaintiff a mortgage statement (hereinafter, "Mortgage Statement")[8] that claimed "Plaintiff missed six (6) monthly mortgage payments due in 1969, some 36 years before the Loan was made. The 'Mortgage Statement' further stated Plaintiff had missed 177 monthly payments (or 14.75 years) and demanded past due

---

[6] A copy of the First Assignment of Deed of Trust was filed as an exhibit to the SAC at Docket No. 14-8.

[7] A copy of the Welcome and Notice of Servicing Transfer letter was filed as an exhibit to the SAC at Docket No. 14-9.

[8] A copy of the Mortgage Statement was filed as an exhibit to the SAC at Docket No. 14-10.

payments under the Note in the amount of $78,065.85." (*Id.* at ¶ 34). Lanni "told Plaintiff [that Plaintiff] was still personally obligated on the Note and unless Plaintiff brought his Note payments current, HGF 401K Pension Plan would report Plaintiff's continued delinquency to national credit bureaus and impair Plaintiff's credit worthiness." (*Id.* at ¶ 35). In August 2023, Lanni "mailed Plaintiff [a] proposed Loan Modification Agreement." (*Id.* at ¶ 37).[9] Plaintiff did not sign the Loan Modification Agreement. (*Id.* at ¶ 43). Lanni and HGF 401K Pension Plan then hired the Trustees "to attempt to collect the debt from Plaintiff, and if unsuccessful to initiate nonjudicial foreclosure on the Deed of Trust." (*Id.* at ¶ 45). Each of the Trustees is a licensed Tennessee attorney who appears from the SAC to be employed at (or doing business as) The Law Office of J. Phillip Jones. (*Id.* at ¶¶ 13-14).

On September 12, 2023, the Trustees, "as counsel for HGF 401K Pension Plan, mailed Plaintiff a notice of default and notice of acceleration if the default is not cured within 30 days of the notice ("Second Acceleration Letter"). The Second Acceleration Letter attached a Fair Debt Collection Practice Act notice . . . claiming Plaintiff owed HGF 401K Pension Plan $128,148.70." (*Id.* at ¶ 46).[10]

"Without notice to Plaintiff, on September 18, 2023, [ ] Lanni, as trustee for HGF 401K Pension Plan, executed an Assignment of Deed of Trust [(hereinafter, "Second Assignment of Deed of Trust")] to [Defendant] Pacific Climbing Society, [and Defendant] HGF Management Company, LLC [(hereinafter "Pacific" and "HGF Mgmt.," respectively)]." (*Id.* at ¶ 52).[11] On

---

[9] A copy of the Loan Modification Agreement was filed as an exhibit to the SAC at Docket No. 14-11.

[10] A copy of the Second Acceleration Letter was filed as an exhibit to the SAC at Docket No. 14-12.

[11] A copy of the Second Assignment of Deed of Trust was filed as an exhibit to the SAC at Docket No. 14-14.
  The allegations here are somewhat unclear and refer to the Second Assignment of Deed of Trust being made to "Pacific Climbing Society, HGF Management Company, LLC." (Doc. No. 14 at ¶ 52). Here, the

October 6, 2023, the Trustees "mailed and emailed Plaintiff another letter stating they now were retained by [Pacific and HGF Mgmt.] to 'foreclose its mortgage on the above referenced property.'" (*Id.* at ¶ 53).[12] In November 2023, Lanni, on behalf of Pacific "mailed Plaintiff another . . . Loan Modification Agreement[,] [the] 'Pacific Modification Proposal.'" (*Id.* at ¶ 56). "Plaintiff did not agree to or sign the Pacific Modification Proposal." (*Id.* at ¶ 61).[13]

On November 28, 2023, the Trustees "caused to be recorded a Substitution of Trustee, stating Pacific is now the Note Holder and assignee of the Deed of Trust and appointing [Trustees] as Substitute Trustees with authority to foreclose upon the Deed of Trust and sell Plaintiff's home at auction." (*Id.* at ¶ 62). On "January 12, 2024, [the Trustees], acting as substitute trustees for Pacific, sent Plaintiff a 'Substitute Trustee's Notice of Foreclosure Sale,' which they published in the Nashville Ledger, scheduling a foreclosure sale for February 8, 2024, at 9:30 a.m." (*Id.* at ¶ 63).[14]

On February 2, 2024, Plaintiff filed a "*Verified Ex parte Petition for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief to Enjoin Foreclosure Sale, and Complaint to Quiet Title* [] in the Davidson County Chancery Court" against HGF 401K Pension

---

Court understands Plaintiff to be referring to both Pacific *and* HGF Mgmt., and not some third entity named "Pacific Climbing Society, HGF Management Company, LLC."

[12] A copy of the letter sent by the Trustees on October 6, 2023 was filed as an exhibit to the SAC at Docket No. 14-15.

Again, the allegations here are somewhat unclear and refer to the Trustees representing "Pacific Climbing Society, HGF Management Company, LLC." (Doc. No. 14 at ¶ 53). Here, as above, the Court understands Plaintiff to be referring to both Pacific *and* HGF Mgmt., and not a third entity named "Pacific Climbing Society, HGF Management Company, LLC."

[13] A copy of the Pacific Modification Proposal was filed as an exhibit to the SAC at Docket No. 14-16.

[14] A copy of the Substitute Trustee's Notice of Foreclosure Sale was filed an exhibit to the SAC at Docket No. 14-17.

Plan, Pacific, HGF Mgmt., and the Trustees. (*Id.* at ¶ 64). Ultimately, the state court granted Plaintiff first a temporary restraining order and, later, a temporary injunction. (*Id.* at ¶¶ 65, 68).

<u>PLAINTIFF'S CLAIM AGAINST THE TRUSTEES AND THE TRUSTEES' MOTION</u>

Plaintiff brings claims against HGF 401K Pension Plan, Pacific, HGF Mgmt., Lanni, Housing Group Fund Corp. and the Trustees. As relevant here, Plaintiff's claim against the Trustees is brought solely in Count VII (Doc. No. 14 at ¶¶ 142-152) of the SAC.[15] Count VII is a claim against the Trustees under the Fair Debt Collection Practices Act ("FDCPA"). In relevant part, Plaintiff alleges that the Trustees are "'debt collectors' under the limited purpose definition provided in Section 803 of the FDCPA, 15 U.S.C. § 1692a(6), because they use [an] instrumentality of interstate commerce or the mails in their law practice, the principal purpose of which is the enforcement of security interests or deeds of trust via nonjudicial foreclosure." (Doc. No. 14 at ¶ 143).[16] Plaintiff further alleges that the Trustees violated "15 U.S.C. § 1692f(6)(A), by 'taking or threatening to take nonjudicial action to effect dispossession or disablement of property [even though there was at the time] no present right to possession of the property claimed as collateral through an enforceable security interest.'" (Doc. No. 14 at ¶ 152).

The Trustees bring their motion on two grounds. First, the Trustees argue that:

The Trustees are not liable [under 15 U.S.C. § 1692f(6)(A)] even if the allegations in the SAC are true, because, under Tenn. Code. Ann. § 35-5-116(f), a trustee is not liable for good faith reliance on the information provided by the borrower or secured party. The SAC offers no allegation that the Trustees intentionally relied

---

[15] Although Plaintiff also brings a claim to "Quiet Title" via Count I, seeking thereby the "entry of a Final Judgment and/or Final Decree forever releasing and discharging Defendants' purported lien or Deed of Trust from the Property" (Doc. No. 14 at ¶ 85), Plaintiff does not bring this claim against the Trustees (or indeed any defendant) in particular, and neither the Trustees nor the Plaintiff address this claim at all in their briefing on the Motion, and so the Court will not address this claim herein.

[16] As will be discussed in more detail below, Plaintiff also includes in the SAC allegations concerning the business model and practices of The Law Office of J. Phillip Jones (Doc. No. 14 at ¶¶ 144-151), which, as noted above, appears to be either the entity Trustees are doing business as or the entity where Trustees are employed as attorneys.

on false information or relied on the information in bad faith. The Trustees have no liability, even if all of the allegations contained within the SAC were true.

(Doc. No. 16-1 at 4-5). Next the Trustees argue that the Trustees cannot be liable, because Plaintiff has not stated a claim under the FDCPA against the Trustees. (*Id.* at 7-8). The Trustees seem (as far as the Court can tell) to hang their hat on the idea that Plaintiff has not plausibly alleged that the Trustees were "debt collectors" within the definition provided in 15 U.S.C. § 1692a(6).[17] (*Id.* at 8).

Plaintiff, naturally, takes issue with each of these arguments, arguing that the FDCPA preempts Tenn. Code Ann. § 35-5-116(f) (so that Tenn. Code Ann. § 35-5-116(f) could not protect the Trustees from liability under the FDCPA) (Doc. No. 17 at 3-5) and that Plaintiff, via the SAC, has stated a claim against the Trustees under the FDCPA. (Doc. No. 17 at 5).

LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

---

[17] The Trustees argument on this point is somewhat difficult to follow, but it appears that in arguing that Plaintiff has failed to state an FDCPA claim against them, the Trustees take specific issue only with Plaintiff's purported failure to plead that the Trustees were "debt collectors" under the FDCPA. Therefore, the Court below will address only the issue of whether the Trustees were "debt collectors" under the FDCPA in examining this particular argument. *See Morrow v. TransUnion LLC*, 730 F. Supp. 3d 671, 675 (E.D. Mich. 2024) (stating that where a defendant's motion to dismiss did "not contest every element of Plaintiff's claims . . . only the specific arguments raised [by the defendant] will be addressed.").

plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, i.e., allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). To put it only slightly differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). That is not to say that the movant has some *evidentiary* burden; as should be clear

from the discussion above, evidence (as opposed to allegations as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

As noted above, the Trustees bring their Motion on two grounds. The first is that a state statute (Tenn. Code Ann. § 35-5-116(f)), precludes liability for the Trustees under the FDCPA (Doc. No. 16-1 at 4-6) and the second is that Plaintiff has not adequately alleged that the Trustees were "debt collectors" under the FDCPA. (*Id.* at 8). The Court will address each of these arguments in turn but will begin by providing a brief overview of those provisions of the FDCPA that are relevant to this action.

1. The FDCPA

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To state a claim under the FDCPA, a Plaintiff must allege four elements: (1) that the plaintiff is a consumer under the FDCPA; (2) that the debt defendant seeks to collect arises from transactions primarily for personal, family or household purposes, (3) that the defendant is a "debt collector" under the FDCPA; and

(4) that the defendant violated a provision of the FDCPA. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).[18]

Relevant to the third element of an FDCPA claim (seemingly the only element challenged here by the Trustees, as noted above)—i.e., that the defendant is a "debt collector,"—the statute provides that a "debt collector" is:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). Importantly, for claims alleging violations of 15 U.S.C. § 1692f(6) (the statutory provision of the FDCPA that Plaintiff alleges the Trustees violated) a "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

With respect to the fourth element of an FDCPA claim,[19] i.e., that the defendant violated a provision of the FDCPA, the FDCPA prohibits "[a]debt collector [from using] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

---

[18] Notably, although in *Wallace* the Sixth Circuit was considering (alleged) violations of 15 U.S.C. § 1692e and referred to the elements of an FDCPA claim in terms of violations of 15 U.S.C. § 1692e specifically, the Court can discern no fault in applying these elements to a claim for alleged violations of 15 U.S.C. § 1692f (like the kind alleged in the instant action). Indeed, district courts in this Circuit regularly apply these four elements to claims for violations of both § 1692e and § 1692f. *See, e.g., Carpenter v. Monroe Fin. Recovery Grp., LLC*, 119 F. Supp. 3d 623, 629 (E.D. Mich. 2015). Moreover, Plaintiff invokes these four elements in his Response (Doc. No. 17 at 5) to the Trustees' Motion and the Trustees, in their Reply, take no issue with such invocation.

[19] The Court includes this information here for context even though, for the reasons described in footnotes above and below, the Court does not analyze whether Plaintiff has adequately alleged the fourth element of his FDCPA claim against the Trustees.

1692e. Likewise, under the statute "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. 15 U.S.C. § 1692e and 15 U.S.C. § 1692f each contain a (non-exhaustive) list of conduct that constitutes a violation of the FDCPA. *See Malone v. Cavalry Portfolio Servs., LLC*, No. 3:14-CV-00428-CRS, 2015 WL 7571881, at *3 (W.D. Ky. Nov. 24, 2015). As relevant here, 15 U.S.C. § 1692f(6)(A) (the specific provision of the FDCPA that Plaintiff contends the Trustees violated) provides in relevant part that the following conduct is in violation of the FDCPA:

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest.

The FDCPA also provides for preemption of state laws in limited circumstances—namely where state "laws are inconsistent with any provision of [the FDCPA], and then only to the extent of the inconsistency." 15 U.S.C § 1692n. The FDCPA further provides that "a State law is not inconsistent with [the FDCPA] if the protection such law affords any consumer is greater than the protection provided by [the FDCPA]." 15 U.S.C § 1692n.

2. Even If Tenn. Code Ann. § 35-5-116(f) Is Not Preempted by the FDCPA, This Would Not Save Plaintiff's Motion.

As explained above, the Trustees contend that Tenn. Code Ann. § 35-5-116(f) protects them from liability under the FDCPA. (Doc. No. 16-1 at 4-6). Plaintiff disagrees, contending that the FDCPA preempts Tenn. Code Ann. § 35-5-116(f). (Doc. No. 17 at 3-5). Ultimately, the Court need not determine whether the FDCPA preempts Tenn. Code Ann. § 35-5-116(f), because even assuming *arguendo* that the FDCPA does not preempt Tenn. Code Ann. § 35-5-116(f), Plaintiff's reliance on Tenn. Code Ann. § 35-5-116(f) at this juncture of the action is unavailing.

Tenn. Code Ann. § 35-5-116(f) provides that:

(f) A trustee shall not be liable for any good faith error resulting from reliance on any information in law or fact provided by the borrower or secured party or their respective attorney, agent, or representative or other third party.

On this point, the Trustees argue that:

The Trustees are not liable even if the allegations in the SAC are true, because, under Tenn. Code. Ann. § 35-5-116(f), a trustee is not liable for good faith reliance on the information provided by the borrower or secured party. The SAC offers no allegation that the Trustees intentionally relied on false information or relied on the information in bad faith. The Trustees have no liability, even if all of the allegations contained within the SAC were true.

(Doc. No. 16-1 at 4-5). The Trustees argue further in their Reply that Tenn. Code Ann. § 35-5-116(f) precludes liability for the Trustees in this action because "Plaintiff fails to factually allege that the Trustees undertook any action regarding the enforcement of the Deed of Trust in bad faith." (Doc. No. 20 at 1). Plaintiff, as noted above, counters that the FDCPA preempts Tenn. Code Ann. § 35-5-116(f) (Doc. No. 17 at 3-5).

As noted above, it is immaterial on the instant Motion whether the FDCPA preempts Tenn. Code Ann. § 35-5-116(f). This is because the Trustees' argument that Tenn. Code Ann. § 35-5-116(f) protects them from liability reflects a fundamental misunderstanding of what a plaintiff must do to state a claim and survive a motion to dismiss. The Court understands the Trustees' invocation of Tenn. Code Ann. § 35-5-116(f) essentially to assert an affirmative defense because the Trustees' argument is that "even if the allegations in the SAC are true," (Doc. No. 16-1 at 4), Tenn. Code Ann. § 35-5-116(f) precludes liability for the Trustees. *See Black's Law Dictionary* (12th ed. 2024) (an affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."); *cf. Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) (an "affirmative defense raises matters extraneous to the plaintiff's prima facie case" as opposed to "negating an element of the plaintiff's prima facie case") (citations omitted)); *see also*

*Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 6 (Tenn. 2008) (noting that the "most commonly understood definition" of affirmative defense is a "matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it") (citations omitted). That the Trustees' invocation of Tenn. Code Ann. § 35-5-116(f) constitutes the assertion of an affirmative defense is fatal to the Trustees' argument that it protects them from liability at the motion to dismiss stage.

It is axiomatic that a court may consider affirmative defenses raised by a defendant at the motion to dismiss stage of a litigation. *See Pugh v. Norman*, No. 3:16-CV-02075, 2017 WL 712751, at *6 (M.D. Tenn. Feb. 23, 2017) ("The court may consider the merit of an affirmative defense on a motion to dismiss where the affirmative defense is apparent on the face of the complaint"), *report and recommendation adopted*, No. 16-02075, 2018 WL 731807 (M.D. Tenn. Feb. 6, 2018); *Craddock v. Hennessee*, No. 1:09-CV-14, 2010 WL 1138300, at *1 (E.D. Tenn. Mar. 18, 2010) ("A defendant can raise affirmative defenses in a motion to dismiss."). However, a "plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss." *Sills v. S. Baptist Convention*, No. 3:23-CV-00478, 2024 WL 1020569, at *10 (M.D. Tenn. Mar. 8, 2024) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). *See also Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) ("A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense."). It follows therefore that "dismissal on the grounds of an affirmative defense is appropriate only if the operative pleading shows on its face that the claim is barred by the defense." *Pridy v. Piedmont Natural Gas Company, Inc.*, 458 F. Supp. 3d 806, 819 (M.D. Tenn. 2020) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). In other words, "a district court may dismiss a complaint based on an affirmative defense only if the complaint's allegations 'affirmatively' trigger the defense."

*Tennessee State Conf. of NAACP v. Lee*, 746 F. Supp. 3d 473, 507 (M.D. Tenn. 2024) (quoting *Cataldo*, 676 F.3d at 547.

Here, it is clear that the SAC's allegations do not "affirmatively trigger the defense" (potentially) afforded to the Trustees by Tenn. Code Ann. § 35-5-116(f). As noted above, Tenn. Code Ann. § 35-5-116(f) precludes liability for a trustee based on "any good faith error resulting from reliance on any information in law or fact provided by the borrower or secured party or their respective attorney, agent, or representative or other third party." As an initial matter, it is evident from the Court's review of the SAC that the allegations therein do not affirmatively trigger the defense contemplated by Tenn. Code Ann. § 35-5-116(f), because the Court cannot discern anywhere in the SAC where Plaintiff suggests that the Trustees were relying in *good faith* on any borrower or secured party—presumably in the form of the Trustees' clients HGF 401K Pension Plan, Pacific, and HGF Mgmt. (although the briefing on the Motion is unclear on this point)—so as to affirmatively trigger Tenn. Code Ann. § 35-5-116(f).

Next addressing the Trustees' argument specifically, the Trustees argue that:

> The Trustees are not liable even if the allegations in the SAC are true, because, under Tenn. Code. Ann. § 35-5-116(f), a trustee is not liable for good faith reliance on the information provided by the borrower or secured party. The SAC offers no allegation that the Trustees intentionally relied on false information or relied on the information in bad faith. The Trustees have no liability, even if all of the allegations contained within the SAC were true.

(Doc. No. 16-1 at 4-5). The Trustees further argue that Tenn. Code Ann. § 35-5-116(f) precludes liability for the trustees in this action because "Plaintiff fails to factually allege that the Trustees undertook any action regarding the enforcement of the Deed of Trust in bad faith." (Doc. No. 20 at 1). Missing from the Trustees' arguments on this point is any contention that Plaintiff's allegations suggest that the Trustees were relying in *good faith* on any borrower or secured party (again presumably in the form of the Trustees' clients HGF 401K Pension Plan, Pacific, and HGF

Mgmt.) so as to affirmatively trigger the protection (possibly) afforded by Tenn. Code Ann. § 35-5-116(f).

Instead, what the Trustees appear to be arguing is that because Plaintiff did not affirmatively allege that the Trustees relied in *bad faith* on the borrowers or secured parties in this action, the Trustees cannot be held liable as Tenn. Code Ann. § 35-5-116(f) protects trustees when they rely in *good faith*. In other words, what the Trustees effectively argue is that Plaintiff should have anticipated the Trustees' affirmative defense—in the form of Tenn. Code Ann. § 35-5-116(f)—by proactively alleging that the Trustees relied in *bad faith* on the borrowers or secured parties in this action, and because Plaintiff did not do this, the Trustees are entitled to dismissal under Tenn. Code Ann. § 35-5-116(f). This argument is entirely unavailing, because as noted above, a "plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss." *Sills*, 2024 WL 1020569, at *10. *See also Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO*, 361 F.3d at 902 ("A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense.").

In summary, even assuming *arguendo*[20] that the FDCPA does not preempt Tenn. Code Ann. § 35-5-116(f), the Trustees' reliance on Tenn. Code Ann. § 35-5-116(f) in support of their Motion is unavailing because the SAC's allegations do not "'affirmatively' trigger the defense" (potentially) afford to the Trustees by Tenn. Code Ann. § 35-5-116(f) as the allegations in the SAC do not suggest that the Trustees were relying in *good faith* on any borrower or secured party so as to implicate Tenn. Code Ann. § 35-5-116(f). *See Tennessee State Conf. of NAACP*, 746 F. Supp.

---

[20] The Court declines to reach the preemption issue raised by the parties in their briefing, given that the preemption issue is unnecessary to deciding the instant Motion. *See Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019) ("[C]ourts should not address a question of preemption if they can resolve the case on other grounds.").

3d at 507 (quoting *Cataldo*, 676 F.3d at 547). Accordingly, the SAC will not be dismissed as to the Trustees on these grounds.[21]

### 3. Plaintiff Has Adequately Alleged That the Trustees Were "Debt Collectors."

As noted above, the Trustees argue that Plaintiff has not stated a claim under the FDCPA against them. The only particular element of an FDCPA claim[22] that the Trustees specifically identify as inadequately pleaded is that the Trustees were "debt collectors" under the statute.[23]

A "debt collector," as noted above, is defined under the FDCPA as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

---

[21] The Court notes, however, that it does not mean to suggest that the Trustees cannot later raise Tenn. Code Ann. § 35-5-116(f) as a defense in this action.

[22] As noted above, to state a claim under the FDCPA a plaintiff must allege four elements: (1) that the plaintiff is a consumer under the FDCPA; (2) that the debt defendant seeks to collect arises from transactions primarily for personal, family or household purposes, (3) that the defendant is a "debt collector" under the FDCPA; and (4) that the defendant violated a provision of the FDCPA. *Wallace*, 683 F.3d at 326. The Trustees seem to contend that only the third element is in doubt, and so the Court focuses on the third element below.

[23] The Court is aware that in the Trustees' Reply, Trustees also argue, without more, that:

> Plaintiff concludes without plausible factual allegations, that the Trustees violated Section 1692f(6)(A) by "taking or threatening to take nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." [SAC, p. 34, ¶152] Plaintiff's SAC contains no factual allegations as to how the Trustees violated Section 1692f(6)(A).

(Doc. No. 20 at 3). This argument is unavailing for two reasons. First, the Trustees did not raise the argument that Plaintiff failed to allege a violation of Section 1692f(6)(A) in their Opening Brief, instead stating (on this point) only that Plaintiffs did not adequately allege that the Trustees were "debt collectors" under the FDCPA. (Doc. No. 16-1 at 8). So it is inappropriate for the Trustees to make this argument for the first time in a Reply. *Cf. Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) ("Generally speaking, arguments raised for the first time in reply briefs are waived."). Second, the Trustees do not actually state specifically how the SAC is deficient with respect to alleging a violation of Section 1692f(6)(A), but instead state (baldly) only that Plaintiff has not provided "plausible factual allegations" to support pleading a claim based on a violation of Section 1692f(6)(A). The Court cannot conclude, with respect to this argument at least, that the Trustees have actually met their burden of explanation to show that no FDCPA claim exists. *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434 ("The moving party has the burden of proving that no claim exists."). Simply stating conclusorily that a plaintiff has failed to provide plausible factual allegations, with no further explanation, will not cut the mustard.

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). Crucially, for claims alleging violations of 15 U.S.C. § 1692f(6) (the statutory provision of the FDCPA that Plaintiff alleges the Trustees violated) a "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).[24]

As relevant here, both Plaintiff and the Trustees appear to agree (Doc. No. 14 at ¶ 143, Doc. No. 16-1 at 7) that the question of whether the Trustees qualify as "debt collectors" under the FDCPA hinges solely on whether the Trustees are persons "who use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests," 15 U.S.C. § 1692a(6), and not on any other definitional language concerning "debt collector" provided in the FDCPA.

Turning to the Trustees' arguments, in relevant part, the Trustees assert that:

In order to state a plausible claim for relief, the well-pleaded facts in the complaint must be more than "merely consistent with a defendant's liability." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d at 481 (citing *Thomas v. U.S. Bank Nat'l Ass'n*, 675 Fed. Appx. 892, 898 (11th Cir. 2017)) (citations omitted). Merely tracking the language of the FDCPA in an attempt to show that the defendant is a debt collector is exactly what the Supreme Court warned of in *Iqbal*. *See Deplae v. Reg'l Acceptance Corp.*, No. 3:09-cv-227, 2010 WL 2270785, at *3 (E.D. Tenn. June 3, 2010); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff's

---

[24] Although the Supreme Court in *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019) held that "those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [the FDCPA]," the Supreme Court explicitly carved out from this holding the claims brought pursuant to § 1692f(6), *id.* at 477—that is, the provision of the FDCPA under which Plaintiff brings his claim against the Trustees. This means that those who engage in nonjudicial foreclosure proceedings, like the Trustees, can be "debt collectors" within the meaning of the FDCPA if a claim is brought against them under § 1692f(6).

obligation to provide the grounds to his entitlement to relief requires more than labels and conclusions and "a formulaic recitation of the elements of a cause of action")

(Doc. No. 16-1 at 8).[25] The legal propositions on which the Trustees rely are true enough, but the SAC does not merely track the language of the FDCPA to establish that the Trustees were "debt collectors." Rather, via the SAC, Plaintiff describes the business model of The Law Office of J. Phillip Jones ("Phillip Jones Law"), which, as noted above, appears to be the entity Trustees are doing business as or is the entity at which the Trustees are employed as attorneys. In fact, Plaintiff alleges with some particularity that Phillip Jones Law had a significant foreclosure practice—one that indeed was the primary purpose of Phillip Jones Law. (*Id.* at ¶¶ 144-51). Specifically, the SAC alleges that Phillip Jones Law had a "specialization and concentration in security interest enforcement, via nonjudicial foreclosure," (*id.* at ¶ 148),[26] and that "Phillip Jones Law advertises its security interest enforcement, foreclosure specialization and related legal services on its public website" (i.e., that Phillip Jones Law uses an instrumentality of interstate commerce (the internet) in advertising its business).[27] (*Id.* at ¶ 151). In other words, the SAC does much more than merely

---

[25] The Trustees also state that "the only involvement of the Trustees with the loan which is the subject of this lawsuit is to act in the capacity as Substitute Trustee, and to conduct foreclosure proceedings. Therefore, the Trustees are entitled to be dismissed from this action, and, for other such relief as is just." (Doc. No. 16-1 at 8). The Trustees do not actually argue or otherwise explain how these assertions show that the Trustees are entitled to dismissal, and so to the extent that the Trustees intended for this to be another basis for the dismissal of the SAC as to them, these assertions are unavailing.

[26] Crucially, the Trustees seem to concede that foreclosing under a nonjudicial foreclosure statute qualifies as the enforcement of a security interest. (Doc. No. 20 at 3).

[27] It is well-established that the use of the internet (such as Phillip Jones Law's alleged use) constitutes the use of an instrumentality of interstate commerce. *See e.g., Ford Motor Co. v. Heritage Mgmt. Grp., Inc.*, 911 F. Supp. 2d 616, 622 (E.D. Tenn. 2020) (noting that the use of the internet in furtherance of a business is "an instrumentality of interstate commerce"); *United States v. Clark*, 24 F.4th 565, 573 (6th Cir. 2022) ("And we have held that the internet is a means of interstate commerce."); *Verified Nutrition, LLC v. Sclar*, No. 217-CV-07499-ODW-RAO, 2017 WL 4785948, at *3 (C.D. Cal. Oct. 23, 2017) ("Where an advertisement is published on the Internet, it is considered used in interstate commerce." (citing *TraffisSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011))).

track the language of the FDCPA to allege that the Trustees were "debt collectors" (as persons "who use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests" 15 U.S.C. § 1692a(6)). Viewed as required in the light most favorable to Plaintiff at this juncture, the SAC provides particularized and plausible allegations that the Trustees—as attorneys at (or doing business as) Phillip Jones Law—used an instrumentality of interstate commerce (i.e., advertising via internet)[28] or the mail in a business (Phillip Jones Law) which had its principal purpose in the enforcement of security interests (via nonjudicial foreclosures). Plaintiff thereby has set forth factual allegations plausibly alleging that the Trustees were "debt collectors" under the FDCPA, and so the SAC will not be dismissed as to the Trustees based on the argument that Plaintiff has failed to do so.

CONCLUSION

Accordingly, for the reasons discussed herein, the Trustees' Motion (Doc. No. 16) is **DENIED** in its entirety.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[28] Although Plaintiff alleges that Phillip Jones Law (as opposed to, perhaps, the Trustees themselves) was the entity using the internet to advertise its business, the Court reasonably infers at this juncture that the Trustees themselves also used the internet in a manner so at to have used "an instrumentality of interstate commerce." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)) (when facing a motion to dismiss, district courts should "construe the complaint in the light most favorable to the plaintiff . . . and draw all reasonable inferences in favor of the plaintiff."), *cert. denied*, 214 L Ed. 2d 253 (2022).